UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/25/18

-------------------------------------------------------------------X

 ERNEST LENEAU,

                       Plaintiff,

          -against-

JOSEPH PONTE; KAREN COLLINS; SIMOD
COVINGTON; SANDRA DEJESUS,

                    Defendants.

-------------------------------------------------------------------X

1:16-cv-776-GHW

OPINION AND ORDER

GREGORY H. WOODS, United States District Judge:

      Plaintiff Ernest Leneau was incarcerated at the Robert N. Davoren Complex ("RNDC") on Riker's Island from December 2015 to February 2016. During Plaintiff's time at the RNDC, he was subjected to a corrections officer's intimidation, racist act, and racial slurs. Plaintiff's personal property was also taken from his cell. Plaintiff filed a grievance against the racist officer, and three weeks later was transferred to another facility. Plaintiff filed this action, bringing various claims under 42 U.S.C. § 1983 against the corrections officers, the RNDC deputy warden, and the New York City Department of Corrections Commissioner. In his third amended complaint, Plaintiff seeks monetary damages and an injunction directing Defendants to adopt non-discrimination policies. Defendants have moved to dismiss Plaintiff's third amended complaint in its entirety. Because Plaintiff alleges sufficient facts to plausibly suggest that his transfer to another facility was in retaliation for the exercise of his First Amendment rights, Defendants' motion to dismiss Plaintiff's retaliation claim is DENIED. Defendants' motion to dismiss Plaintiff's other federal claims is GRANTED.

# I.    BACKGROUND[1]

The events giving rise to Plaintiff's claims occurred while he was an inmate at the Robert N. Davoren Complex ("RNDC") on Riker's Island between December 2015 and February 2016.  Third Amended Complaint, ECF No. 41 ("TAC") at 5.[2]

During Plaintiff's time at the RNDC, he was hired for an unspecified work detail by an officer who Plaintiff identifies as Officer Cody No. 1.  TAC at 7.  Plaintiff worked under Officer Cody No. 1 for three months, and, according to Plaintiff, Officer Cody No. 1 "never had any problem with" Plaintiff's work.  *Id.*  Plaintiff was also employed "in the same office" by an officer he identifies as Officer Cody No. 2.  *Id.*  Plaintiff worked for Officer Cody No. 2 for at least three months and "had no problem with working for her."  *Id.*  In addition to his work for Officer Cody No. 1 and No. 2, Plaintiff was also employed by Officer Jermiah in Plaintiff's "house unit 6 main." *Id.*  Plaintiff believes that Officer Jermiah got him that job because Plaintiff "was a clean and good worker."  *Id.*

## A.  C.O. Sandra DeJesus's Intimidation and Racism

At some point, while Officer Cody No. 2 "was still their [sic]," Corrections Officer ("C.O.") Sandra DeJesus returned to work.  *Id.*  C.O. DeJesus "didn't like [Plaintiff] because she didn't hire [Plaintiff] and because [Plaintiff] was black."  *Id.*  C.O. DeJesus was intimidating and committed a "racist act."  *Id.*

Plaintiff informed other officers of C.O. DeJesus's "[i]ntimidation" and "racist act,"

---

[1]  Unless otherwise noted, the facts are taken from the third amended complaint, including the medical records and other appended documents.  *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." (citations omitted)).  The alleged facts are accepted as true for the purposes of this motion.  *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002); *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.").  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2]  In citing to the third amended complaint, the Court cites to the page numbers indicated on the ECF docket notation.

including Mr. Oliver, Captain Burk, a captain "in the visit," Dep. Glen, Officer Feilder, Officer Flord, and "Officer Q." *Id.* Officer Flord confirmed that Plaintiff "had a incounter [sic] with Ms DeJesus." *Id.* Officer Flord knew the encounter was "true" because she also "had a problem with [C.O. DeJesus]" when "she first started." *Id.*

On February 4, 2016, Plaintiff reported to Sady Sultan, M.D. at the RNDC during a medical visit that a "white female officer . . . [had] been discriminating him." TAC at 10. During another medical visit the next day, on February 5, 2016, Plaintiff reported to Elizabeth Neuland, LMHC that he had an "issue" with a Hispanic officer three weeks prior to the medical visit. TAC at 11. Plaintiff reported that he was told on February 5, 2016 to "pack up" because he threatened the Hispanic officer. *Id.* Plaintiff complained to Ms. Neuland that the Hispanic officer was "racist and used racist slurs against him." *Id.* Plaintiff also explained that he had filed a grievance against that officer. *Id.*

### B. C.O. Simod Covington's Bullying

On an unspecified date, while Plaintiff was in court, C.O. Simod Covington went to Plaintiff's cell and packed up some of Plaintiff's things without a captain present, as Plaintiff alleges is required for an officer to visit an inmate's cell while the inmate is in court. TAC at 8.[3] In the process, C.O. Covington "took" Plaintiff's wedding band "and left food in [Plaintiff's] cell for the other inmate to take." *Id.*

C.O. Covington also "bull[ed]" Plaintiff verbally on several occasions. *Id.* On February 2, 2016, C.O. Covington told Plaintiff, "I'm going to get you out of my mother fucking house." *Id.* C.O. Covington repeated this to Plaintiff later on that same day. *Id.* On February 10, 2016, C.O. Covington told Plaintiff to "pack up." *Id.*

---

[3] Plaintiff's allegations refer to "C.O. Cumberland." See TAC at 8. However, as noted, C.O. Cumberland was previously identified correctly as C.O. Simod Covington. Therefore, the Court reads the allegations related to C.O. Cumberland as relating to C.O. Covington.

### C. Plaintiff's Transfer

Plaintiff was transferred from the RNDC to the Otis Bantum Correctional Center ("OBCC") in mid-February 2016. TAC at 9, 12.[4] After his transfer, Plaintiff wrote a letter addressed to "Mr. Joseph Ponte, Commissioner." TAC at 9. In that letter, dated February 14, 2016, Plaintiff complained that "in your jail system a person can't make complaint about a racist [corrections officer], or write about a problem from a [corrections officer] because if you do you will be moved." *Id.* As Plaintiff explained, he was a "56 year old Black man that came from a good family but got involved with a [sic] officer who [Plaintiff] told [he] wanted to clean up [his] community but [the officer] turned on [Plaintiff]." *Id.* Plaintiff declared that he was "move [sic] out of RNDC because [he] wrote up a [sic] officer." *Id.* As Plaintiff explained, he was "the Inmate President," but the officers did not like what Plaintiff stood for. *Id.*

Despite Plaintiff's complaints that the officers at the RNDC were "like Tugs [sic], treating old men like little boys," Plaintiff expressed a desire to be transferred back to the RNDC. *Id.* He claimed that the OBCC housed too many gangs and that he could not "get on the phone when [he] want[ed] to." *Id.* Plaintiff complained, however, that Plaintiff concluded the letter by stating, "I know you can promote the creation of a fair, humane and [t]ruly rehabilitavie [sic] correctional system." *Id.*

On March 1, 2016, Plaintiff filed a grievance with the New York City Department of Corrections. TAC at 12. In that grievance, Plaintiff reported that "he was transferred out of RNDC while at court and his belongings were packed by an unknown individual." *Id.* Plaintiff also claimed that his wedding ring and medication were taken, and he sought their return. *Id.* The Inmate Grievance and Request Program ("IGRP") determined that no wedding ring was "found or

---

[4] The exact date of Plaintiff's transfer to the OBCC is unclear from the pleadings. Page 9 of the TAC appears to be a letter written by Plaintiff to Commissioner Joseph Ponte. The letter is dated February 14, 2016 and states that Plaintiff "is now in OBCC." TAC at 9. Page 12 of the TAC, an Inmate Grievance and Request Program Disposition Form, states that Plaintiff's transfer "was not affected [sic] until February 16, 2016." TAC at 12.

vouchered," that Plaintiff would be advised to visit sick call for a prescription refill, and that Plaintiff's transfer "was not affected [sic] until February 16, 2016." *Id.*

### D. Procedural History

Plaintiff filed this action *pro se* on February 2, 2016, naming as defendants New York City Department of Corrections Commissioner Joseph Ponte, Warden K. Collins, Deputy Warden Programs John/Jane Doe, and C.O. DeJesus.  ECF No. 2.  Plaintiff was granted leave to proceed *in forma pauperis* on April 5, 2016.  ECF No. 4.

Defendants filed a motion to dismiss the complaint on August 15, 2016.  ECF No. 19.  On September 1, 2016, Plaintiff filed his first amended complaint, naming as defendants Commissioner Ponte, Warden Collins, C.O. DeJesus, and C.O. Cumberland.  ECF No. 21.  On September 12, 2016, Defendants' motion to dismiss was withdrawn as moot.  ECF No. 22.  On October 6, 2016, the Court granted Plaintiff leave to file a second amended complaint for the limited purpose of correcting the identification of the defendant identified as C.O. Cumberland.  ECF No. 26.

On October 13, 2016, Plaintiff filed a second amended complaint.  ECF No. 27.  In that complaint, Plaintiff amended the defendant previously listed as C.O. Cumberland to C.O. Covington.  *Id.*  On October 27, 2016, Defendants Ponte, Collins, and DeJesus filed an answer to the second amended complaint.  ECF No. 28.

On November 1, 2016, the Court ordered service of the second amended complaint on C.O. Covington.  ECF No. 29.  After prolonged efforts by the Department of Corrections to identify the defendant listed as C.O. Covington, on February 10, 2017, that defendant was identified as C.O. Simod Covington.  ECF No. 39.  On February 13, 2017, the Court directed Plaintiff to file a third amended complaint for the limited purpose of correcting the identification of that defendant.  ECF No. 40.  The Court also ordered that the third amended complaint would replace, not supplement, all prior complaints.  *Id.*

Plaintiff filed a third amended complaint on March 10, 2017.  ECF No. 41.  Defendants filed

a motion to dismiss the third amended complaint on June 22, 2017. ECF No. 53. Plaintiff did not oppose the motion. On August 10, 2017, the Court directed Plaintiff to file any opposition no later than September 1, 2017. ECF No. 56. Plaintiff filed no opposition, and the Court treats Defendant's motion to dismiss the third amended complaint as unopposed.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). However, a complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a

district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted). "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *Id.* (quoting *Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir. 2006)). Finally, the Court may also consider "matters of which judicial notice may be taken." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (citation omitted).

Because he is proceeding *pro se*, the Court must liberally construe Plaintiff's submissions and interpret them "to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)); *see also, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed' . . . ." (citation omitted)); *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) ("Where . . . the complaint was filed *pro se*, it must be construed liberally to raise the strongest arguments it suggests." (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013))). This mandate "applies with particular force when a plaintiff's civil rights are at issue." *Bell v. Jendell*, 980 F. Supp. 2d 555, 558 (S.D.N.Y. 2013) (quoting *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 348 (S.D.N.Y. 2009)). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Id.* at 559 (internal quotation marks and citation omitted); *see also Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) ("[D]ismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997))).

## III.   DISCUSSION

Plaintiff frames his allegations as bringing an equal protection claim under the Fourteenth

Amendment and the Fifth Amendment.[5]  The Court construes Plaintiff's third amended complaint as raising claims under 42 U.S.C. § 1983 for racial discrimination under the Fourteenth Amendment, unconstitutional conditions of confinement under the Eighth Amendment, deprivation of personal property, unreasonable search under the Fourth Amendment, Fourteenth Amendment due process claims, retaliation under the First Amendment, and a claim for municipal liability.

## A. Eleventh Amendment

As a preliminary matter, although Defendants do not raise the issue, the Court addresses its jurisdiction over Plaintiff's claims.  *See Blumatte v. Quinn*, 521 F. Supp. 2d 308, 310 (S.D.N.Y. 2007) ("Subject matter jurisdiction is a threshold inquiry a Court must answer before addressing the merits of a claim." (citing *Gutierrez v. Fox*, 141 F.3d 425, 426 (2d Cir. 1998))).  Plaintiff asserts that he is "suing the defendants in their official capacities, and in their individual capacities."  TAC at 6.  The Eleventh Amendment prohibits courts from exercising jurisdiction over lawsuits against a state seeking monetary damages unless the state waives sovereign immunity or Congress has expressly and validly abrogated that immunity.  *See Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001).  In a § 1983 action, a suit for damages against a state official in his official capacity is deemed to be a suit against the state, thereby entitling the official to invoke the sovereign immunity reserved for states under the Eleventh Amendment.  *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993).  Congress has not expressly stated any intent to override state sovereign immunity for Section 1983 claims, *see Quern v. Jordan,* 440 U.S. 332, 343, (1979), and the state of New

---

[5] Plaintiff fails to state a claim under the Fifth Amendment.  "The Fifth Amendment's Due Process Clause protects citizens against only federal government actors," *Mitchell v. Home*, 377 F. Supp. 2d 361, 372 (S.D.N.Y. 2005) (citing *Dusenbery v. United States,* 534 U.S. 161, 167 (2002)), and because Plaintiff alleges deprivations only by state government officials, his claims "arise solely from the Fourteenth Amendment due process clause," *id.* at 373 (citing *Dusenbery*, 534 U.S. at 167).  Thus, insofar as Plaintiff's claims are based on a violation of his constitutional rights under the Fifth Amendment, those claims are dismissed.

York has not consented to suits in federal court, *see Gross v. New York,* 428 Fed. App'x 52, 53 (2d Cir. 2011) (noting that the state of New York has waived its immunity by consenting only to being sued in the New York Court of Claims but not in federal court). Accordingly, Plaintiff's Section 1983 claim for damages against Defendants in their official capacities is dismissed with prejudice.

### B. Claims Against C.O. DeJesus and C.O. Covington

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that the defendant "acted under color of state law and that [he] deprived him of a right secured by the Constitution or laws of the United States." *Palmieri v. Lynch*, 392 F.3d 73, 78 (2d Cir. 2004) (citing *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). "Section 1983 does not in and of itself create any substantive rights; rather, a plaintiff bringing a § 1983 claim must demonstrate a violation of an independent federal constitutional or statutory right." *Watts v. N.Y. City Police Dep't*, 100 F. Supp. 3d 314, 322 (S.D.N.Y. 2015) (citing *Chapman v. Hous. Welfare Rights Org.*, 441 U.S. 600, 617-18 (1979)).

#### 1. Racial Discrimination under the Fourteenth Amendment

Plaintiff's equal protection claim under the Fourteenth Amendment fails. "The Equal Protection Clause directs state actors to treat similarly situated people alike." *Bussey v. Phillips*, 419 F. Supp. 2d 569, 581 (S.D.N.Y. 2006) (citing *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995)). The Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (emphasis omitted) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). To state an equal protection violation, a plaintiff must allege "'purposeful discrimination directed at an identifiable or suspect class' or that, as a 'class of one,' he has been 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Barone v. United States*, No. 12-cv-4103 (LAK), 2014 WL 4467780, at *23 (S.D.N.Y. Sept. 10, 2014)

9

(citations omitted).

Here, Plaintiff alleges that C.O. DeJesus did not like him because he "was black." TAC at 7. Therefore, the Court construes the third amended complaint as raising an equal protection claim based on racial discrimination by C.O. DeJesus. Plaintiff fails, however, to plead any facts that would plausibly suggest that C.O. DeJesus treated Plaintiff adversely because of his race. Plaintiff alleges that C.O. DeJesus was intimidating and that she performed some unidentified "racist act." TAC at 7. The TAC contains no explanation, however, of specific acts of intimidation, nor does it describe the alleged "racist act." These statements are nothing more than conclusory allegations and fail to state a claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citation omitted)).

The only additional detail is contained in one of the medical records appended to the third amended complaint that documents Plaintiff's report that a Hispanic officer with whom he had an "issue" was racist and "used racist slurs against him." TAC at 11. The medical record does not identify the officer. Construing the medical record as referring to C.O. DeJesus, this allegation is nonetheless insufficient to state a claim for racial discrimination under the Fourteenth Amendment. "Mere verbal abuse or the use of racial slurs or epithets reflecting racial prejudice, although reprehensible, does not form the basis of a claim pursuant to [Section] 1983." *Baskerville v. Goord*, No. 97-cv-6413 (BSJ), 2000 WL 897153, at *3 (S.D.N.Y. July 6, 2000). "Where, however, such statements are shown to be connected with physical injury, a § 1983 claim may indeed lie." *Id.* (citations omitted); *see also Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (per curiam) ("The claim that a prison guard called [the plaintiff] names also did not allege any appreciable injury and was properly dismissed."); *Sloane v. Mazzuca*, No. 04-cv-8266 (KMK), 2006 WL 3096031, at *11 (S.D.N.Y. Oct. 31, 2006) ("[V]erbal harassment—even potentially racist harassment— 'unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and is therefore not

actionable under 42 U.S.C. § 1983.'" (quoting *Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998))).

Plaintiff also alleges that C.O. DeJesus "caused a great hardship of Plaintiff, because now he has to rely on his family who are struggling on the outside to make end meet to support his [sic] financially." TAC at 8. To the extent that this allegation can be construed to assert that Plaintiff either was removed from his assigned work detail or suffered some other loss in income from that work detail, the third amended complaint fails to plead sufficient facts to plausibly suggest that such a loss was due to C.O. DeJesus's acts of racial discrimination. As just discussed, Plaintiff states nothing regarding the specific conduct of C.O. DeJesus, other than to allege that she committed a "racist act" and used racial slurs against him. Plaintiff's allegations are also void of any facts to suggest that inmates outside of his protected class—for example, Caucasian inmates—were treated better than he. Nor does the third amended complaint allege that C.O. DeJesus treated Plaintiff differently than any other inmate so as to state a claim based on a class-of-one theory. *See Fahs Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013) ("Where a class-of-one theory is available, the plaintiff must allege 'that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate governmental policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.'" (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006))).

In the absence of facts that could plausibly support purposeful discrimination, Plaintiff's equal protection claim is dismissed without prejudice.

## 2. Eighth Amendment Claim

To state a claim under the Eighth Amendment based on an inmate's conditions of confinement, "an inmate must allege that: (1) objectively, the deprivation the inmate suffered was 'sufficiently serious that he was denied the minimal civilized measure of life's necessities,' and (2)

subjectively, the defendant official acted with 'a sufficiently culpable state of mind . . . , such as deliberate indifference to inmate health or safety.'" *Walker*, 717 F.3d at 125 (quoting *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)). "To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Id.* (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (per curiam)). "[T]he [objective] standard contemplates deprivations of 'basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety.'" *Cuffee v. City of New York*, No. 15-cv-8916 (PGG) (DF), 2017 WL 1232737, at *6 (S.D.N.Y. Mar. 3, 2017) (quoting *Phelps*, 308 F.3d at 185). "To meet the subjective element, the [inmate] must show that the defendant acted with 'more than mere negligence.'" *Walker*, 717 F.3d at 125 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "To constitute deliberate indifference, '[t]he prison official must know of, and disregard, an excessive risk to inmate health or safety.'" *Id.* (quoting *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012)).

### a. Work Detail

Plaintiff alleges that C.O. DeJesus "displayed an act of deliberate indifference towards Plaintiff, pro se, that emantes [sic] cruel and unusual punishment" and that "caused a great hardship of Plaintiff, because now he has to rely on his family who are struggling on the outside to make end [sic] meet to support his [sic] financially." TAC at 8. Plaintiff also alleges that he was able to perform well in his job before C.O. DeJesus's return. TAC at 7. To the extent Plaintiff alleges that the conditions of his work detail or that his removal from a work detail violated his Eighth Amendment rights, those claims fail.

Plaintiff has alleged no facts that suggest, let alone plausibly suggest, that C.O. DeJesus deprived him of a "basic human need" during the course of his employment. *Cuffee*, 2017 WL 1232737, at *6. Furthermore, the Second Circuit has held that exclusion from a prison's work program "does not even constitute 'punishment,' let alone punishment that is 'cruel and unusual.'"

*LaBounty v. Adler*, 933 F.2d 121, 124 (2d Cir. 1991); *see also Little v. Municipal Corp.*, 51 F. Supp. 3d 473, 496 (S.D.N.Y. 2014) (finding that claims that the plaintiffs' classification led to their being "fired from work assignments, subjected to searches, forced to wear lime green prison jumpers on visiting floors, and re-housed" did not "rise to a level as to constitute punishment" (internal quotation marks omitted)); *Harrison v. Fischer*, No. 08-cv-1327 (NAM) (DRH), 2010 WL 2653629, at *8 (N.D.N.Y. June 7, 2010) (noting that "discharge from prison programming is [ ] not a constitutional violation"), *report and recommendation adopted*, No. 08-cv-1327 (NAM), 2010 WL 2653477 (N.D.N.Y. June 29, 2010). As a result, Plaintiff's work-detail allegations do not satisfy the objective prong of an Eighth Amendment claim.

Plaintiff also fails to meet the subjective prong of the test. The third amended complaint contains no allegations suggesting that C.O. DeJesus knowingly did anything that posed an excessive risk to Plaintiff's health and safety. Thus, to the extent the third amended complaint can be read to raise an Eighth Amendment claim predicated on Plaintiff's working conditions or removal from work, that claim is dismissed with prejudice.

### b. Verbal Harassment

Construed liberally, the third amended complaint alleges that C.O. DeJesus used racial slurs against Plaintiff. Plaintiff also alleges that C.O. Covington inflicted "excessive cruel punishment" and "bull[ed]" him by saying, "I'm going to get you out of my mother fucking house" and "pack up." TAC at 8.[6]

To the extent that Plaintiff seeks to assert a claim of verbal abuse, the verbal harassment alleged by Plaintiff by itself does not satisfy the objective prong of an Eighth Amendment claim

---

[6] The third amended complaint also pleads that C.O. Covington inflicted "excessive cruel punishment" on Plaintiff when he packed up some of Plaintiff's things from his cell and took his wedding band while Plaintiff was in court. TAC at 8. The pleadings contain no suggestion that the packing of Plaintiff's belongings deprived him of "basic human needs." *Cuffee*, 2017 WL 1232737, at *6. Rather, the Court construes any claim related to Plaintiff's belongings as a claim for deprivation of property, discussed *infra* at Section III.B.3.

because it is not "objectively harmful enough to establish a constitutional violation." *Banks v. County of Westchester*, 168 F. Supp. 3d 682, 691 (S.D.N.Y. 2016) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). "[V]erbal harassment or profanity alone, 'unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Shabazz*, 994 F. Supp. at 474 (citations omitted); *see also Banks*, 168 F. Supp. 3d at 691 (concluding that allegations of racial slurs, harassment, and taunting were insufficient to state a claim under the Eighth Amendment); *Tavares v. City of New York*, No. 08-cv-3782 (PAE) (JCF), 2011 WL 5877550, at *7 (S.D.N.Y. Oct. 17, 2011) (finding that verbal harassment by corrections officer during a pat frisk failed to establish an Eighth Amendment violation), *report and recommendation adopted*, No. 08-cv-3782 (PAE), 2011 WL 5877548 (S.D.N.Y. Nov. 23, 2011); *Webster v. Fischer*, 694 F. Supp. 2d 163, 187 (N.D.N.Y. 2010) ("[T]he mere allegation of verbal abuse, however repugnant it may be, does not rise to the level of a constitutional violation and is not cognizable under [section] 1983."), *aff'd*, 398 Fed. App'x 683 (2d Cir. 2010).

Plaintiff's third amended complaint does not allege that either C.O. DeJesus or C.O. Covington inflicted any personal injury on him in conjunction with the racial slurs and verbal threats to have him transferred. In his letter to Commissioner Ponte, Plaintiff asserts that the "office [sic] at RNDC are like Tugs [sic], treating old men like little boys it unfair." TAC at 9. Even construing this allegation to refer to C.O. DeJesus and C.O. Covington, the statement contains no facts suggesting that "treating old men like little boys" caused Plaintiff any injury. In the absence of a plausibly pleaded injury in connection with the alleged verbal harassment, Plaintiff's claim of verbal abuse fails to pass muster under the objective prong of the Eighth Amendment claim.

Plaintiff's allegations also fail to satisfy the subjective prong because they contain even less indicia of any knowing act taken by C.O. DeJesus or C.O. Covington that exposed Plaintiff to an excessive risk to his health and safety. Accordingly, any Eighth Amendment claim predicated on

verbal abuse is dismissed without prejudice.

### c. Transfer to the OBCC[7]

Read in the light most favorable to Plaintiff, the third amended complaint alleges that C.O. DeJesus and C.O. Covington were involved in his transfer to the OBCC. Plaintiff's medical record states that C.O. DeJesus claimed that Plaintiff had threatened her, which resulted in his being told to "pack up." TAC at 11. C.O. Covington is also alleged to have told him to "pack up." TAC at 8. Shortly thereafter, Plaintiff was transferred from the RNDC to the OBCC. TAC at 9, 12. In his letter to Commissioner Ponte, Plaintiff asserts that the "OBCC has to [sic] many gang for a man like [Plaintiff], can't get on the phone when you want to it a problem." TAC at 9. These allegations, considered together, suggest that C.O. DeJesus and Covington took actions that led to Plaintiff's transfer to a facility in which gangs were prevalent and, as a result, Plaintiff did not have adequate access to a phone. Such allegations insufficiently plead an Eighth Amendment violation.

"A prison official's failure to prevent harm to a prisoner violates the Eighth Amendment if the official is deliberately indifferent to a substantial risk of serious harm posed by the conditions faced by the prisoner." *Green v. City of N.Y. Dep't of Corrs.*, No. 06-cv-4978 (LTS) (KNF), 2008 WL 2485402, at *6 (S.D.N.Y. June 19, 2008) (citing *Farmer*, 511 U.S. at 834). "Not every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety . . . ." *Id.* (quoting *Farmer*, 511, U.S. at 834 (internal quotation marks omitted)); *see Cooper v. City of New York*, No. 13-cv-7590 (PKC) (JLC), 2014 WL 5315074, at *2 (S.D.N.Y. Oct. 17, 2014). Indeed, courts in this circuit rarely find a substantial risk of serious harm "without any allegation that physical harm actually existed or was imminent." *Green*, 2008 WL

---

[7] The statements in the letter addressed to Commissioner Ponte assert that the "OBCC has to [sic] many gang for a man like [Plaintiff], can't get on the phone when you want to it a problem." TAC at 9. To the extent that Plaintiff pleads a conditions-of-confinement claim with respect to the conditions at the OBCC, that claim cannot be maintained against the RNDC defendants—Collins, DeJesus, and Covington. There is no allegation that any of those defendants also work at or otherwise acted in any way at the OBCC. *See Sharma v. D'Silva*, 157 F. Supp. 3d 293, 304 (S.D.N.Y. 2016) ("To successfully allege Section 1983 liability, a plaintiff must demonstrate 'personal involvement' and cannot merely rely upon an individual's position of authority." (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985))).

2485402, at *6; *see, e.g., id.* at *6-7 (finding that inmate who officers falsely designated as gang-affiliated did not sufficiently plead that he faced a substantial risk of serious harm from other inmates in the absence of any allegation of resulting injury); *Chalif v. Spitzer*, No. 05-cv-1355 (LEK) (DEP), 2008 WL 1848650, at *9 (N.D.N.Y. Apr. 23, 2008) (finding insufficient allegation of substantial risk of serious harm where plaintiff alleged "credible threats" and that he was subjected to "psychological torture by imminent threat of death" but did not allege that "he was assaulted by any fellow inmates, or that such an assault was threatened and imminent"); *Hudson v. Greiner*, No. 99-cv-12339 (LAP), 2000 WL 1838324, at *7 (S.D.N.Y. Dec. 13, 2000) (finding allegation that the prison administration knew that placing the plaintiff in the general prison population could lead to his being injured, without an allegation of physical injury, was insufficient to state an Eighth Amendment claim). Moreover, "[w]hile an actual physical attack is not required to demonstrate a substantial risk of serious harm, mere fear of an assault is insufficient to state a claim for an Eighth Amendment violation." *Cooper*, 2014 WL 5315074, at *3; *see Cruz v. Hillman*, No. 01-cv-4169 (DAB) (DF), 2002 WL 31045864, at *8 (S.D.N.Y. May 16, 2002) ("[F]ear of assault does not constitute a 'sufficiently serious' injury sufficient to state a claim under the Eighth Amendment.").

Here, Plaintiff alleges nothing to suggest that the presence of gang members at the OBCC caused him physical harm or placed him in a position of imminent harm. Instead, his allegations suggest that the injury that he has suffered because of the heavy gang presence is his inability to "get on the phone" when he wants to. TAC at 9. This hardly constitutes a substantial risk of serious harm, and cannot sustain a claim for an Eighth Amendment violation. Accordingly, any Eighth Amendment claim predicated on Plaintiff's transfer to the OBCC is dismissed without prejudice. [8]

---

[8] Plaintiff does not allege whether he was a pretrial detainee at the time of the alleged incidents or whether he was a convicted inmate. In the event that Plaintiff was a pretrial detainee, his claim would properly be brought under the Fourteenth Amendment, not the Eighth. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment." (citations omitted)). The standard to state a sufficiently serious deprivation is the same under both the Eighth and Fourteenth Amendments.

### 3. Deprivation of Personal Property

Plaintiff alleges that C.O. Covington took his wedding band and medication. TAC at 8, 12. Defendants argue that Plaintiff's allegations concerning the confiscation of his property do not state a due process claim because (1) Plaintiff does not allege that any of the named defendants are responsible for taking his property, and (2) even if Plaintiff did sufficiently allege the personal involvement of a defendant, Plaintiff had opportunities for redress through state law. The Court finds that the third amended complaint sufficiently pleads the personal involvement of C.O. Covington in the confiscation of Plaintiff's wedding ring and medication. Construed liberally with all inferences drawn in Plaintiff's favor, the pleadings allege that it was C.O. Covington who entered Plaintiff's cell, packed his things, and took his wedding band. TAC at 8. Plaintiff later filed a grievance complaining that in addition to his wedding band, his medication had been removed by the officer who packed his belongings. TAC at 12. Read together, these allegations sufficiently plead C.O. Covington's personal involvement in the confiscation of Plaintiff's personal property.

Nonetheless, the Court agrees with Defendants that Plaintiff's claims for a constitutional deprivation of personal property are not cognizable because New York law provides an adequate post-deprivation remedy. "Whether negligent or deliberate, the destruction of an inmate's property caused by a prison officer's unauthorized conduct does not give rise to a claim under the Due Process Clause if the state provides that inmate with an adequate postdeprivation remedy." *Toliver v. City of New York*, No. 10-cv-5806 (SHS) (JCF), 2013 WL 6476791, at *7 (S.D.N.Y. Dec. 10, 2013) (citing *Hudson v. Palmer*, 468 U.S. 517, 533-36 (1984), *report and recommendation adopted*, No. 10-cv-5806

---

*See Lloyd v. City of New York*, 246 F. Supp. 3d 704, 717-19 (S.D.N.Y. 2017). However, the second element of the claim—the culpable state of mind requirement—is evaluated objectively under the Fourteenth Amendment rather than subjectively as under the Eighth Amendment. *Id.* at 719. Thus, a pretrial detainee need only plead that the defendant "'knew, or should have known' that his or her conduct 'posed an excessive risk to health or safety'" rather than that the defendant actually knew of and disregarded such a risk. *Id.* (quoting *Darnell*, 849 F.3d at 33, 35). Even under the more liberal pleading standard afforded by the objective *mens rea* prong, Plaintiff fails to state a claim. He pleads no facts that plausibly suggest any excessive risk to his health or safety. Therefore, Plaintiff fails to state a claim under either the Eighth or the Fourteenth Amendment.

(SHS), 2014 WL 549402 (S.D.N.Y. Feb. 11, 2014)).  "It is well established that New York provides

inmates with the opportunity for a meaningful postdeprivation hearing through state law causes of

action for 'negligence, replevin, or conversion which could fully compensate [the plaintiff] for his

alleged property loss.'"  *Id.* (quoting *Cook v. City of New York*, 607 F. Supp. 702, 704 (S.D.N.Y.

1985)).  Plaintiff does not claim that he was denied adequate post-deprivation procedures by which

to seek compensation for the destruction of his property.  As a result, he has not stated a due

process claim for the loss of his personal items.  That claim is dismissed without prejudice.

### 4.  Unreasonable Search

Plaintiff alleges that C.O. Covington entered his cell while he was at court and packed up

some of Plaintiff's things even though a captain was not present.  To the extent that Plaintiff's

allegations can be construed as raising a Fourth Amendment claim for an unreasonable search of his

cell, that claim is dismissed.

"The fourth amendment prohibits only unreasonable searches; therefore, the test in a fourth

amendment case is whether the search was reasonable.  To determine reasonableness, the court

must balance the intrusiveness of the search on the individual's fourth amendment interests against

its promotion of legitimate governmental interests."  *Sec. & Law Enf't Emps., Dist. Council 82, Am.

Fed'n of State, Cty. & Mun. Emps., AFL-CIO by Clay v. Carey*, 737 F.2d 187, 201 (2d Cir. 1984)

(citations omitted).  "The test of reasonableness under the Fourth Amendment . . . requires a

balancing of the need for the particular search against the invasion of personal rights that the search

entails."  *Bell v. Wolfish*, 441 U.S. 520, 559 (1979).

In *Hudson*, the Supreme Court held that prison officials may search prisoners' cells without

violating the Fourth Amendment because "[t]he recognition of privacy rights for prisoners in their

individual cells simply cannot be reconciled with the concept of incarceration and the needs and

objectives of penal institutions."  *Hudson*, 468 U.S. at 526.  The Second Circuit has observed that

within their cells "pretrial detainees may have some residual privacy interests that are protected by

the Fourth Amendment . . . ." *United States v. Willoughby*, 860 F.2d 15, 21 (2d Cir. 1988).

Nonetheless, "prison officials are presumed to do their best to evaluate and monitor objectively the security needs of the institution and the inmates in their custody, and then to determine whether and when such concerns necessitate a search of a prison cell." *United States v. Cohen,* 796 F.2d 20, 23 (2d Cir. 1986). "Accordingly, when a prison official initiates the search of a pre-trial detainee's cell, the search is not 'subject to constitutional challenge, regardless of whether security needs could justify it.'" *Williams v. Ramos*, No. 13-cv-826 (VB), 2013 WL 7017674, at *8 (S.D.N.Y. Dec. 23, 2013) (quoting *Cohen*, 796 F.2d at 24); *see Ortiz v. City of New York*, No. 12-cv-3118 (HB), 2012 WL 6200397, at *7 (S.D.N.Y. Dec. 12, 2012) ("The task of determining whether a policy is reasonably related to legitimate security interests is peculiarly within the province and professional expertise of corrections officials . . . [I]n the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations[,] courts should ordinarily defer to their expert judgment in such matters." (quoting *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 328 (2012)) (omission and alterations in original)); *cf. Cohen,* 796 F.2d at 24 (finding that pretrial detainee whose "effects were searched at the instigation of non-prison officials for non-institutional security related reasons" could properly challenge the validity of that search).

It is unclear from Plaintiff's submissions whether he was a convicted inmate or a pretrial detainee at the time his cell was searched. Regardless of Plaintiff's status, any Fourth Amendment claim that can be construed from his submissions is dismissed. The only fact that Plaintiff pleads bearing on the unreasonableness of the entry into his cell is that it was performed without a captain being present. However, Plaintiff alleges that it was a prison official, C.O. Covington, who performed the search, and the third amended complaint does not suggest that the search was instigated by a non-prison official. Accordingly, Plaintiff's allegations do not plausibly state a claim for unreasonable search under the Fourth Amendment, and any such claim is dismissed without prejudice.

### 5. First Amendment Retaliation

"It is well established that the First Amendment protects prisoners from retaliation for engaging in protected speech, which includes submitting grievances regarding prison conditions." *Koehl v. Bernstein*, No. 10-cv-3808 (SHS) (GWG), 2011 WL 2436817, at *11 (S.D.N.Y. June 17, 2011) (citing *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir. 1996); *Jones v. Coughlin,* 45 F.3d 677, 679-80 (2d Cir. 1995); *Franco v. Kelly,* 854 F.2d 584, 589 (2d Cir. 1988)), *report and recommendation adopted*, No. 10-cv-3808 (SHS), 2011 WL 4390007 (S.D.N.Y. Sept. 21, 2011).  To survive a motion to dismiss, a plaintiff asserting First Amendment retaliation claims "must advance non-conclusory allegations establishing:  (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."  *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).  "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation."  *Davis v. Goord,* 320 F.3d 346, 353 (2d Cir. 2003) (internal quotation marks and citations omitted); *accord Rivera v. Goord,* 253 F. Supp. 2d 735, 749 (S.D.N.Y. 2003).

In evaluating a retaliation claim, "the court's inquiry must be tailored to the different circumstances in which retaliation claims arise, bearing in mind that prisoners may be required to tolerate more than average citizens before a retaliatory action taken against them is considered adverse."  *Davis,* 320 F.3d at 353 (internal punctuation and citation omitted).  Because of the ease with which claims of retaliation can be invoked, the Second Circuit has cautioned that "courts must approach prisoner claims of retaliation with skepticism and particular care" in part because "virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act."  *Dawes*, 239 F.3d at 491.  The Second Circuit requires that such claims be

"'supported by specific and detailed factual allegations,' not stated 'in wholly conclusory terms.'" *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983), *overruled on other grounds*, *Swierkiewicz*, 534 U.S. at 506).

Notwithstanding the cautionary approach taken by courts in evaluating prisoner retaliation claims, "[w]here retaliation claims may have merit, the prisoner making the claim must be accorded the full procedural and substantive safeguards available to other litigants." *Gadson v. Goord*, No. 96-cv-7544, 1997 WL 714878, at *7 (S.D.N.Y. Nov. 17, 1997) (Sotomayor, J.) (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)). "A retaliation claim supported by specific and detailed factual allegations which amounts to a persuasive case ought to be pursued with full discovery. However, a Complaint which alleges retaliation in wholly conclusory terms may be safely dismissed on the pleadings alone." *Id.* (quoting *Flaherty*, 713 F.2d at 13) (citing *Colon*, 58 F.3d at 872).

Moreover, at the early stage of a motion to dismiss, "if the causal connection between the protected speech and the adverse action is sufficiently pled, [the plaintiff] 'should have the opportunity to develop facts that would demonstrate that [the actions] would deter a reasonable inmate from pursuing grievances.'" *Davis*, 320 F.3d at 354 (quoting *Morales v. Mackalm*, 278 F.3d 126, 131-32 (2d Cir. 2002) (per curiam), *abrogated on other grounds*, *Porter v. Nussle*, 534 U.S. 516 (2002)). The causation requirement is met when the allegations "support the inference that the speech played a substantial part in the adverse action." *Id.* (quoting *Dawes*, 239 F.3d at 492). "[T]he temporal proximity of an allegedly retaliatory [action] to a grievance may serve as circumstantial evidence of retaliation." *Gayle v. Gonyea*, 313 F.3d 677, 683 (2d Cir. 2002) (citing *Colon*, 58 F.3d at 872).

Here, Plaintiff alleges that he "placed a grievance against" the racist Hispanic officer, after which he was told to "pack up" and was transferred to the OBCC. TAC at 9, 11-12. Plaintiff also asserts that he "was move [sic] out of RNDC because [he] wrote up a officer." TAC at 9. Plaintiff reported that he was told to "pack up" on February 5, 2016, approximately three weeks after his "issue" with the Hispanic officer. TAC at 11. Read liberally, the third amended complaint alleges

that Plaintiff's interaction with that officer directly caused the transfer. As Plaintiff reported during his medical visit, security officers explained that his transfer was triggered by his threat to the Hispanic officer, but Plaintiff suggests that the proffered reason for his transfer was merely pretext for a retaliatory response to the filing of his grievance. *See id.* By February 14, 2016, Plaintiff was at the OBCC. TAC at 9. Construing Plaintiff's pleadings liberally and drawing all inferences in Plaintiff's favor, the third amended complaint alleges that Plaintiff filed a grievance against C.O. DeJesus and that grievance caused Plaintiff to be transferred to the OBCC approximately three weeks later.

It is well-established that, while "[a] prisoner has no liberty interest in remaining at a particular correctional facility," "prison authorities may not transfer an inmate in retaliation for the exercise of constitutionally protected rights." *Davis v. Kelly*, 160 F.3d 917, 920 (2d Cir. 1998) (internal citations omitted); *see Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987) ("Of course, a claim for relief may be stated under section 1983 if otherwise routine administrative decisions are made in retaliation for the exercise of constitutionally protected rights."). Because Plaintiff alleges that the transfer took place a mere three weeks after he filed his grievance and that prison security officials told him that the transfer resulted from his "threats" to the officer, Plaintiff's allegations are sufficient to support an inference of a causal relationship between Plaintiff's protected speech—the filing of a grievance—and the adverse action—his transfer to another facility. *See Davis*, 320 F.3d at 354 (finding allegations that prison officials "sent a negative message" about the plaintiff to officials at another facility and that the adverse actions against the plaintiff at the other facility began immediately upon plaintiff's arrival sufficiently pleaded a causal connection); *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (finding that passage of six months between dismissal of prisoner's lawsuit and alleged act of retaliation by prison officers, one of whom was a defendant in the prior lawsuit, sufficiently supported an inference of causal connection); *Rodriguez v. McClenning*, 399 F. Supp. 2d 228, 240 (S.D.N.Y. 2005) (finding inference of retaliatory intent when alleged retaliatory

action was taken two days after the plaintiff filed a grievance); *but see Spavone v. Fischer*, No. 10-cv-9427 (RJH) (THK), 2012 WL 360289, at *5 (S.D.N.Y. Feb. 3, 2012) (concluding that fifteen-month period between alleged retaliatory act and filing of lawsuit failed to give rise to inference of retaliatory intent).

Defendants argue that, even if a retaliatory purpose can be inferred from Plaintiff's allegations, Plaintiff's claim must fail because he fails to allege the personal involvement of any defendant in the decision to transfer him. The Court disagrees. As just explained, Plaintiff's allegations can be construed to plead that he had an "issue" with C.O. DeJesus, after which he filed a grievance against her, and that he was told to "pack up" because of allegations that he threatened C.O. DeJesus. The Court is satisfied that, for purposes of this motion, Plaintiff sufficiently pleads C.O. DeJesus's involvement in the decision to have Plaintiff transferred. Plaintiff will be given the opportunity to develop a factual record demonstrating that his transfer to the OBCC would "deter a reasonable inmate from pursuing grievances." *Davis*, 320 F.3d at 354 (citation omitted); *see Morales*, 278 F.3d at 132 (vacating dismissal and stating that plaintiff "should have the opportunity to develop facts that would demonstrate that the prospect of confinement in a psychiatric facility would deter a reasonable inmate from pursuing grievances"). Defendants' motion to dismiss Plaintiff's retaliation claim is denied.

### 6. Due Process Claims

The third amended complaint can be construed to allege that Plaintiff was deprived of his Fourteenth Amendment procedural due process rights when he was removed from his work detail and when he was transferred to the OBCC only because he "wrote up" an officer. To succeed on a procedural due process claim, a plaintiff must establish that (1) he possessed a liberty interest, and (2) defendants deprived him of that interest through insufficient process. *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004). "Liberty interests protected by the Fourteenth Amendment may arise from two sources—the Due Process Clause itself and the laws of the States." *Hewitt v. Helms*, 459 U.S.

460, 466 (1983), *overruled in part*, *Sandin v. Conner*, 515 U.S. 472 (1995).  The Court examines each of Plaintiff's due process claims below with this general framework in view.

### a.  Removal from Work Detail

As discussed earlier, Plaintiff's allegations may be read to suggest that his constitutional rights were violated when he was removed from a work detail.  To the extent that Plaintiff alleges a due process violation in connection with that removal, that claim is dismissed.

"[P]risoners have no protected liberty or property interest in a particular job assignment." *Njasang Nji v. Heath*, No. 13-cv-200 (CM), 2013 WL 6250298, at *7 (S.D.N.Y. Dec. 2, 2013); *see Frazier v. Coughlin*, 81 F.3d 313, 318 (2d Cir. 1996) (per curiam) (holding that a prisoner in a New York State correctional facility "has no protected liberty interest in a particular job assignment"); *Johnson v. Rowley*, 569 F.3d 40, 44 (2d Cir. 2009) (holding that a federal prisoner has no property interest in a UNICOR job assignment).  Accordingly, because Plaintiff had no liberty interest in his work assignment, any due process claim predicated on that work assignment is dismissed with prejudice.

### b.  Transfer to the OBCC

Plaintiff's due process claim based on his transfer to the OBCC likewise fails because Plaintiff has no liberty interest in his place of detention under either the Due Process Clause or the laws of New York.

"A prisoner's administrative classification does not give rise to a protected liberty interest under the Due Process Clause."  *Cooper*, 2014 WL 5315074, at *4 (citing *Hewitt*, 459 U.S. at 468); *see also Walker v. City of New York*, No. 11-cv-9611 (PKC) (JLC), 2012 WL 3037308, at *2 (S.D.N.Y. July 25, 2012) ("[P]rison officials have 'full discretion' to control conditions of confinement, which include prisoner classification, and prisoners have 'no legitimate statutory or constitutional entitlement sufficient to invoke due process' in connection with such conditions." (quoting *Pugliese v. Nelson*, 617 F.2d 916, 923 (2d Cir. 1980))).  Similarly, "[t]he transfer of an inmate within a prison

population or between prisons [ ] fails to involve an interest independently protected by the Due Process Clause." *Cooper*, 2014 WL 5315074, at *4; *Covino v. Vermont Dep't of Corrs.*, 933 F.2d 128, 129 (2d Cir. 1991) ("'[T]he transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons' is not a right protected by the due process clause itself." (quoting *Hewitt*, 459 U.S. at 468)).

States may confer liberty interests on prisoners through statues or regulations. *See Arce v. Walker*, 139 F.3d 329, 334 (2d Cir.1998). Courts have found that New York laws and regulations give prison officials broad discretion to transfer inmates between facilities regardless of administrative classifications. *See, e.g., Cooper*, 2014 WL 5315074, at *4 ("Judges of this District have analyzed relevant New York statutes and regulations and determined that they do not give rise to a protectable liberty interest regarding the administrative classification of inmates."); *Caldwell v. Dep't of Corr. for City of New York*, No. 14-cv-5551 (JS) (ARL), 2015 WL 428033, at *5 (E.D.N.Y. Jan. 30, 2015) (collecting cases); *Rosario v. Fischer*, No. 11-cv-4617 (JPO) (FM), 2012 WL 4044901, at *11 (S.D.N.Y. Aug. 28, 2012), *report and recommendation adopted*, No. 11-cv-4617 (JPO), 2012 WL 6681695 (S.D.N.Y. Dec. 20, 2012) (finding that the applicable laws and regulations do not create a liberty interest against transfer "since New York State regulations do not substantively restrict prison officials' authority to transfer pretrial detainees").

Because Plaintiff does not have a liberty interest in his transfer to the OBCC, his due process claim with respect to that transfer must be dismissed with prejudice.

### C. Claims Against Commissioner Ponte

The "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (internal quotation marks omitted) (quoting *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)). The Second Circuit has defined "personal involvement" to mean direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect

participation, such as "ordering or helping others to do the unlawful acts." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (citation omitted).

"To successfully allege Section 1983 liability [against a supervisor], a plaintiff must demonstrate 'personal involvement' and cannot merely rely upon an individual's position of authority." *Sharma v. D'Silva*, 157 F. Supp. 3d 293, 304 (S.D.N.Y. 2016) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)). A plaintiff may sufficiently plead a prison supervisor's personal involvement by alleging that he:

> (1) directly participated in the violation, (2) failed to remedy the violation after being informed of it by report or appeal, (3) created a policy or custom under which the violation occurred, (4) was grossly negligent in supervising subordinates who committed the violation, or (5) was deliberately indifferent to the rights of others by failing to act on information that constitutional rights were being violated.

*Mateo v. Fischer*, 682 F. Supp. 2d 423, 429-30 (S.D.N.Y. 2010) (quoting *Wingate v. Gives*, No. 05-cv-1872 (LAK), 2008 WL 5649089, at *13 (S.D.N.Y. Apr. 13, 2008)); *see Colon*, 58 F.3d at 873.

"[T]he receipt of letters or grievances, by itself, does not amount to personal involvement." *Mateo*, 682 F. Supp. 2d at 430; *see Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (DOCS Commissioner had no personal involvement when plaintiff wrote him two letters, one an appeal the Commissioner had referred to the prison superintendent for decision); *Bodie v. Morgenthau*, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004) (finding personal involvement only where a supervisory official received, reviewed, and responded to a prisoner's complaint); *Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002) ("[I]f mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that § 1983 does not impose *respondeat superior* liability." (citations omitted)). "Similarly, receipt of a letter, without personally investigating or acting on the letter or grievance, is insufficient to establish personal involvement." *Harrison*, 2010 WL 2653629, at *4; *see Rivera v. Fischer*, 655 F. Supp. 2d 235, 238 (W.D.N.Y. 2009) (citing cases); *see also Bodie*, 342 F. Supp.

2d at 203; *Higgins v. Artuz,* No. 94-cv-4810, 1997 WL 466505, at *7 (S.D.N.Y. Aug. 14, 1997) (Sotomayor, J.) ("[I]t is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations" (quotation marks and citation omitted)); *Watson v. McGinnis,* 964 F. Supp. 127, 130 (S.D.N.Y.1997) ("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability.").

Here, Plaintiff alleges no facts that would plausibly suggest any of the types of conduct identified in *Mateo.* With respect to the first type of conduct—direct participation in the violation— the only allegation that may reasonably be construed as pleading Commissioner Ponte's direct involvement is Plaintiff's assertion that "all the defendants named are liable and responsible for said hardship that the Plaintiff, pro se Ernest Leneau has experience [sic] under the care custody, and control of D.O.C." TAC at 8. However, complaints that rely on "group pleading" and "fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim." *Adamou v. Cty. of Spotsylvania, Va.,* No. 12-cv-7789 (ALC), 2016 WL 1064608, at *11 (S.D.N.Y. Mar. 14, 2016) (citing *Atuahene v. City of Hartford,* 10 Fed. App'x 33, 34 (2d Cir. 2001) (observing that Federal Rule of Civil Procedure 8 "requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests," and that a complaint fails to meet that minimum where it "lump[s] all the defendants together in each claim and provide[s] no factual basis to distinguish their conduct")); *see also Spring v. Allegany-Limestone Cent. Sch. Dist.,* 138 F. Supp. 3d 282, 293 (W.D.N.Y. 2015) ("Because the personal involvement of a defendant is a prerequisite to an award of damages under § 1983, a plaintiff cannot rely on a group pleading against all defendants without making specific individual factual allegations."); *Thomas v. Venditto*, 925 F. Supp. 2d 352, 363 (E.D.N.Y. 2013) ("[I]t is insufficient for the plaintiffs to rely on group pleading against [these defendants] without making specific factual allegations [against them]." (alterations in original) (internal quotation marks and citation omitted)); *cf. Iqbal*, 556 U.S. at 676

27

("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Therefore, Plaintiff's general allegation that all defendants were involved in the alleged constitutional violations does not rescue the claims against Commissioner Ponte from dismissal.

While Plaintiff does plead in his letter addressed to the Commissioner that "in [Commissioner Ponte's] jail system," an inmate that complains about an officer is transferred, TAC at 9, Plaintiff's allegations do not assert that Commissioner Ponte was personally involved in Plaintiff's transfer to the OBCC. Moreover, while Plaintiff alleges that he filed a grievance against C.O. DeJesus and a grievance based on the loss of his personal property, the mere fact of filing a grievance is insufficient to allege the personal involvement of Commissioner Ponte in the underlying violations. *Mateo*, 682 F. Supp. 2d at 430.

With respect to the other types of conduct identified in *Mateo*, Plaintiff does not allege that Commissioner Ponte was informed of a constitutional violation by way of the grievances, nor that he failed to take steps to remedy the alleged violations. Plaintiff additionally fails to allege that the letter addressed to Commissioner Ponte was actually sent to the Commissioner, or that the Commissioner received the letter and then failed to take any remedial action.

Plaintiff also fails to allege facts that would suggest that Commissioner Ponte "created a policy or custom under which the [alleged] violation[s] occurred." *Mateo*, 682 F. Supp. 2d at 430. In this regard, the Court does not construe Plaintiff's statements in the letter to the Commissioner as suggesting that Commissioner Ponte was responsible for creating a policy or custom that led to the alleged violations. Rather, the letter is phrased as a call upon the commissioner to make changes in the jail system. Plaintiff's tone is hopeful, stating that the Commissioner "took the job because [he] new [sic] that [he] could make a different [sic]" and that Plaintiff knew that Commissioner Ponte "can promote the creation of a fair, human and truly rehabilitavie [sic] correctional system." TAC at 9.

Thus, because Plaintiff fails to allege any actions on the part of Commissioner Ponte that could plausibly be construed as personal involvement in any of the alleged constitutional violations, the claims against the Commissioner are dismissed without prejudice.

### D. Claims Against Deputy Warden Collins

Plaintiff's claims against Deputy Warden Karen Collins are also dismissed for failure to allege personal involvement. Plaintiff's only mention of Warden Collins in the third amended complaint is in the list of defendants. Although Plaintiff alleges that "all the defendants named are liable and responsible for" Plaintiff's "hardship," TAC at 8, the TAC pleads nothing with respect to Warden Collins's specific actions. Because it is well settled that "group pleading," *i.e.*, pleading that "fail[s] to differentiate as to which defendant was involved in the alleged unlawful conduct," is insufficient to state a claim under section 1983, *Adamou*, 2016 WL 1064608, at *11, Plaintiff's claims against Warden Collins are dismissed without prejudice.

### E. *Monell* Claim

Plaintiff alleges that he is suing Defendants in their official capacity. To the extent that the third amended complaint can be construed to raise a claim against the City of New York for municipal liability under *Monell*, that claim is also dismissed.

"To hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (internal quotation marks and alterations omitted); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Accordingly, "a municipality cannot be made liable [under § 1983] by application of the doctrine of *respondeat superior*," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986), but rather the plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the moving force behind the alleged injury," *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (internal quotation marks and citation omitted).

A plaintiff may satisfy the "policy or custom" prong in one of four ways:  by proving the existence of (1) a formal policy, *see Monell*, 436 U.S. at 690; (2) actions taken or decisions made by final municipal policymakers that caused the violation of plaintiff's rights, *see Pembaur*,  475 U.S. at 483-84; (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policymakers, *see Monell*, 436 U.S. at 690-91; or (4) a failure to properly train or supervise municipal employees that amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact, *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see also Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996).

Here, all of Plaintiff's Section 1983 claims have been dismissed with the exception of his claim for retaliation.  Therefore, a claim for municipal liability would survive only if the third amended complaint plausibly suggests a policy or custom of retaliation for the exercise of prisoners' First Amendment rights.  *See, e.g., City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("[None] of our cases authorize[ ] the award of damages against a municipal corporation based on the actions of one of its officers . . . [i]f a person has suffered no constitutional injury . . . ."); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (where "district court properly found no underlying constitutional violation," it was not necessary to consider claims of municipal liability under *Monell*); *Levy v. Alfano*, 47 F. Supp. 2d 488, 498 (S.D.N.Y. 1999) ("It is well settled that a municipality may not be held liable where there is no underlying constitutional violation by a municipal official." (citation omitted)).

Plaintiff alleges that in Commissioner Ponte's "jail system a person can't make complaint about a racist C.O[.], or write about a problem from a C.O[.] because if you do you will be moved." TAC at 9.  However, Plaintiff's allegations concern only *his* alleged retaliatory transfer; they say nothing as to other retaliatory transfers that would suggest that there indeed exists a "persistent or widespread" policy or custom of transferring inmates when they file a grievance.  *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004) ("It is sufficient to show, for example, that a

discriminatory practice of municipal officials was so 'persistent or widespread' as to constitute 'a custom or usage with the force of law.'" (quoting *Sorlucco v. N.Y. City Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992))); *see DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) ("[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." (citation omitted)).  Nor does Plaintiff allege that C.O. DeJesus was a final policymaker, whose decision would be capable of rendering the City of New York liable under *Monell.  See Pembaur*, 475 U.S. at 483-84.

Accordingly, Plaintiff's claims for municipal liability are dismissed without prejudice.

### F.  Claims for Emotional Harm

Under Section 1997e(e) of the Prisoner Litigation Reform Act ("PLRA"), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e); *see also Thompson v. Carter*, 284 F.3d 411, 417 (2d Cir. 2002) (" . . . Section 1997e(e) applies to claims in which a plaintiff alleges constitutional violations so that the plaintiff cannot recover damages for mental or emotional injury for a constitutional violation in the absence of a showing of actual physical injury.").  The purpose of the PLRA's physical injury requirement is "to weed out frivolous claims where only emotional injuries are alleged." *Cox v. Malone*, 199 F. Supp. 2d 135, 140 (S.D.N.Y. 2002), *aff'd*, 56 Fed. App'x 43 (2d Cir. 2003).  Thus, "[i]n order to recover compensatory damages, a plaintiff must allege that he or she has suffered a physical injury." *Gilmore v. Rivera*, No. 13-cv-6955 (RWS), 2014 WL 1998227, at *6 (S.D.N.Y. May 14, 2014).

Although the PLRA does not define "physical injury," some courts have held that the alleged injury must be "more than *de minimis*, but need not be significant." *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); *Gilmore*, 2014 WL 1998227, at *7 ("The physical injury complained of must be more than a *de minimis* one."); *see also Liner v. Goord*, 196 F.3d 132, 135 (2d Cir. 1999) (citing *Siglar* and concluding that the prisoner's allegations of "sexual assaults would constitute more than *de*

*minimis* injury if they occurred").

Here, Plaintiff alleges that he seeks "pain and suffering damages" in the amount of $30,000 from each Defendant and "emotional stress" damages in the amount of $30,000 from each Defendant. TAC at 6. Plaintiff alleges that he sustained various injuries as a result of Defendant's conduct, including emotional stress, mental anguish, stress, paranoia, "fear of working around Hispanic people," "intimidations," insomnia, and chronic migraines. TAC at 6. None of these injuries constitutes a "physical injury" under the PLRA. *See, e.g., Smith v. City of New York*, No. 14-cv-443 (LTS) (KNF), 2015 WL 1433321, at *9 (S.D.N.Y. Mar. 30, 2015) (concluding that the plaintiff's alleged "stress, depression, and sleep deprived nights" were not physical injuries under the PLRA); *Abreu v. Nicholls*, No. 04-cv-7778 (DAB) (GWG), 2011 WL 1044373, at *3 (S.D.N.Y. Mar. 22, 2011) (finding that chronic headaches and an inability to sleep "do not constitute a 'physical injury' within the meaning of section 1997e(e) of the PLRA"), *report and recommendation adopted*, No. 04-cv-7778 (RO), 2012 WL 1079985 (S.D.N.Y. Mar. 30, 2012); *Pierre-Antoine v. City of New York*, No. 04-cv-6987 (GEL), 2006 WL 1292076 (S.D.N.Y. May 9, 2006) (characterizing "general fear or mistrust of police officers" as an emotional injury); *Voorhees v. Goord*, No. 05-cv-1407 (KMW) (HBP), 2006 WL 1888638 (S.D.N.Y. Feb. 24, 2006) (dismissing plaintiff's arguments that "stress," "fear," and "depression" were physical injuries under the PLRA). Accordingly, Plaintiff's claim for compensatory damages is dismissed without prejudice.

### G. State Law Claims

Defendants have not moved to dismiss any state law claims suggested by the third amended complaint. Therefore, to the extent Plaintiff pleads any claims under New York law, those claims survive.

## IV. LEAVE TO AMEND

In this circuit, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* Fed. R. Civ. P.

15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Accordingly, the Court grants Plaintiff leave to amend the complaint, solely with respect to those claims that were dismissed without prejudice, to correct the deficiencies identified in this opinion. Any amended complaint must be filed no later than 30 days after the date of this order.

## V. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED in part and DENIED in part:

All of Plaintiff's claims against Commissioner Ponte are dismissed without prejudice.

All of Plaintiff's claims against Deputy Warden Collins are dismissed without prejudice.

Plaintiff's Fourteenth Amendment equal protection claim against C.O. DeJesus is dismissed without prejudice.

Plaintiff's Eighth Amendment claim against C.O.s DeJesus and Covington is dismissed with prejudice to the extent that claim is based on Plaintiff's work detail. Plaintiff's Eighth Amendment claim is dismissed without prejudice to the extent that claim is based on verbal harassment and Plaintiff's transfer to the OBCC.

Plaintiff's claim for deprivation of personal property against C.O. Covington is dismissed without prejudice.

Plaintiff's Fourth Amendment unreasonable search claim against C.O. Covington is dismissed without prejudice.

Plaintiff's Fourteenth Amendment due process claims against C.O.s DeJesus and Covington are dismissed with prejudice.

Plaintiff's municipal liability claim is dismissed without prejudice.

Plaintiff's First Amendment retaliation claim survives. However, Plaintiff's claim for compensatory damages is dismissed without prejudice.

Plaintiff's state law claims survive.

Plaintiff is granted leave to replead those claims that have been dismissed without prejudice no later than 30 days following the date of this order.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court requests that counsel for Defendants provide Plaintiff with copies of unpublished cases cited in this decision pursuant to Local Rule of the United States District Courts for the Southern and Eastern Districts of New York 7.2.

The Clerk of Court is directed to terminate the motion pending at ECF No. 53 and to mail a copy of this order to Plaintiff by certified mail.

SO ORDERED.

Dated:  January 24, 2018
New York, New York

_____
GREGORY H. WOODS
United States District Judge